UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN CASARETTO aka JUAN CASARETTO and GLORIA CASARETTO,<br><br>Plaintiffs,<br>v.<br><br>COLDWELL BANKER REALTY; KELLER WILLIAMS REALTY; OSCAR MARTINEZ dba CENTURY MEDALLION LOS GATOS; WILLOW MORTGAGE COMPANY; VALLEY OF CALIFORNIA, INC, dba COLDWELL BANKER; TIMOTHY CONWAY; and ALEXIS JAN BRIGHAM,<br><br>Defendants. | Case No.: 10-CV-00509-LHK<br><br><br><br>ORDER GRANTING COLDWELL BANKER REALTY AND ALEXIS JAN BRIGHAM'S MOTION FOR SUMMARY JUDGMENT |

Defendants Valley of California, Inc. dba Coldwell Banker Realty (Coldwell) and Alexis Jan Brigham (Brigham) (together, Defendants) move for summary judgment of the single claim asserted against them in this matter (Motion, Dkt. No. 42). The Court held a hearing on this motion on April 14, 2011. Based on the parties' arguments and the evidence presented in the papers and at the hearing, and for the reasons set forth below, Defendants' Motion is GRANTED.

1

Case No.: 10-CV-00509-LHK
ORDER GRANTING SUMMARY JUDGMENT

I.      Introduction and Factual Background

The claims in this case arise from a commercial property transaction. In 2005, Plaintiffs John and Gloria Casaretto listed their property at 238 Curtner Avenue in Campbell, California (the Property) for sale. Koss Decl. ISO Mot., Ex. A (Pl. Dep.) at 17:20-18:1. The Property housed a combination auto body/repair shop. *Id*. at 13:8-17. A potential buyer, Mr. Emilio Montes De Oca, made an offer to purchase the property on April 7, 2007. *See* Koss Decl. Ex. D (Pl.'s Dep. Ex. 3). In the ensuing negotiations, De Oca was represented by real estate agent Brigham (who was then associated with Keller Williams Realty), and Plaintiffs were represented by real estate agent Oscar Martinez.[1] *Id*. The parties negotiated the potential purchase over the next several months and ultimately reached an agreement. *See* Koss Decl. Ex. F (Pl.'s Dep. Ex. 16).

On October 12, 2007, Plaintiffs accepted De Oca's offer of $1,499,000 for the Property with a $43,500 down payment. The offer was contingent upon De Oca obtaining a first mortgage loan secured by a deed of trust for $935,000, and a second such loan for $425,000. Plaintiffs offered to "carry back" $100,000, also secured by a deed of trust. *Id*. At the time of this offer, Brigham was associated with Coldwell. *Id*. De Oca was unable to secure funding for the October 12, 2007 offer. Therefore, the parties restructured the deal so that the purchase price reflected in the sales contract was $1.1 M (the appraised value of the Property). *See* Koss Decl. Ex. M (Pl.'s Dep. Ex. 21); Ex. H (Pl.'s Dep. Ex. 15). This agreement stated that De Oca would obtain a first loan of $935,000, and the Plaintiffs would "carry back" a loan for $55,000, at 10% interest and payable in two years. *Id*. The Plaintiffs and De Oca signed this agreement on October 22, 2007. *Id*. In addition to the $1.1 M contemplated by this offer, the Plaintiffs agreed to loan De Oca the outstanding $400,000 to reflect the agreed-upon overall value of $1.5 M. Plaintiffs understood that this loan would be paid back in the "next following days" after the close of escrow on the $1.1 M contract. *See* Koss Decl. Ex. T (Pl.'s Dep. 66:1-15).

Plaintiffs claim their understanding that the $400,000 loan would be funded near the time of the close of escrow on the $1.1 M contract was based on representations by Martinez, the proposed

---

[1] Defendants object to Plaintiff's reliance on certain testimony by Mr. Martinez as improper expert testimony. Because the Court does not rely on this testimony to resolve this Motion, the objection is moot.

2

Case No.: 10-CV-00509-LHK
ORDER GRANTING SUMMARY JUDGMENT

funder (defendant Tim Conway), and Brigham.  Regarding representations made by Brigham, Mr. Casaretto testified that in October, 2007, while the various contracts were being negotiated, Brigham told him that Tim Conway was a "wealthy guy" who would loan De Oca the money to cover the $400,000 loan.  *See* Rice Decl. Ex. I (Pl. Dep. 75:22-76:9).  At the October 22, 2007 signing, Brigham also reportedly told Mr. Casaretto that Conway said he would loan this money to De Oca, and that he would receive the money in the "next following days."  *Id*. at 77:2-18; 61:15-20.  Also at the October 22, 2007 signing, Mr. Casaretto testified that Brigham said she was "applying for a second loan" in case Conway never made the loan, and that "either way" funding would be secured.  *Id*. at 95:20-10.

On November 1, 2007, Plaintiffs and De Oca signed a promissory note by which De Oca promised to repay $400,000 by November 15, 2007.  *See* Koss Decl., Ex. V (Pl.'s Dep. Ex. 28).  If payment was not made by this date, the debt would be subject to 14% interest per year, interest-only payments would be due monthly, and the balance would be due in two years.  The note also stated that in case of a default, the entire note was due and payable immediately at Plaintiffs' option.  *Id*.

Escrow closed on the $ 1.1 M contract on November 5, 2007.  Koss Decl. Ex. CC (Pl.'s Dep. Ex. 29).  The funding for the $400,000 loan was not obtained, and the loan was not repaid by November 15, 2007.  On November 27-28, 2007, Plaintiffs and De Oca executed another purchase agreement for the improvements on the Property and goodwill of the Plaintiffs' business, which stated that De Oca offered $400,000 for these things.  *See* Koss Decl. Ex. EE (Pl. Dep. Ex. 34).  The offer in this second contract states that escrow will close on November 30, 2007, or 45 days after acceptance (meaning January 14, 2008).  Martinez wrote to Conway on January 5, 2008, asking if he required anything else to close escrow.  *See* Koss Decl. Ex. GG (Pl.'s Dep. Ex. 39).  Conway never provided funds.

Based on Mr. Casaretto's account of the statements by Brigham, Plaintiffs assert a claim of negligent misrepresentation against her and Coldwell.  In their Complaint, Plaintiffs allege that all the defendants, including Brigham, "assured Plaintiffs, prior to the close of escrow on the sale of said property, that said loan of approximately $500,000 would be promptly forthcoming upon close

3
Case No.: 10-CV-00509-LHK
ORDER GRANTING SUMMARY JUDGMENT

of escrow of the subject property, and further, that said funds would be utilized to promptly pay off an additional seller-carried loan in the amount of $400,000, which Plaintiffs agreed to carry." Compl. ¶ 16.  Plaintiffs assert that these statements about repayment of the $400,000 and $55,000 loans were made "without a reasonable basis" for belief that any loan would be made, and that Plaintiffs "relied upon such representations in closing escrow on the subject property.  Without said representations having been made, Plaintiffs would not have closed escrow on the subject property, would not have accepted the promissory note for $400,000, and further, would not have accepted an additional promissory note in the amount of $55,000 . . . .".  Compl. ¶ 19.

II.     Legal Standard

Summary judgment should be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  Material facts are those which may affect the outcome of the case, and a dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the Court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "[T]he district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-560 (2006).

The moving party has the initial burden of production for showing the absence of any material fact.  *Celotex*, 477 U.S. at 331.  The moving party can satisfy this burden in two ways.  "First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim.  Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.  Once the moving party has satisfied its initial burden of production, the burden of proof shifts to the nonmovant to show that that there is a genuine issue of material fact.  A party asserting that a fact is genuinely disputed must support that assertion by either citing to particular parts of materials in the record or by showing that the materials cited by the moving party do not

4
Case No.: 10-CV-00509-LHK
ORDER GRANTING SUMMARY JUDGMENT

1   establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c). The nonmovant must go beyond
2   its pleadings "and by her own affidavits, or by the depositions, answers to interrogatories, and
3   admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*,
4   477 U.S. at 324 (internal quotation marks and citation omitted).

### III.   Application

Defendants move for summary judgment that Plaintiffs' claim of negligent misrepresentation against them is time-barred.[2] The statute of limitations for a claim of negligent misrepresentation is two years from the date the claim accrues. *E-Fab, Inc. v. Accountants, Inc. Servs.,* 153 Cal. App. 4th 1308, 1316 (2007). A claim accrues on the date when the plaintiff is injured, but accrual can be postponed until plaintiff "discovers or has reason to discover the existence of a claim," meaning that the plaintiff "at least has reason to suspect a factual basis for its elements." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,* 522 F.3d 1049, 1054 (9th Cir. 2008) (internal citations omitted). Once aware of an injury, plaintiffs must conduct a "reasonable investigation." *Id*. "So long as there is a reasonable ground for suspicion, the plaintiff must go out and find the facts; she cannot wait for the facts to find her." *Id*. (internal citation and quotation omitted).

The elements of negligent misrepresentation include: (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage. *Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1201 (9th Cir. 2001). Defendants argue that Plaintiffs must have been actually aware of all these elements by November 15, 2007, when De Oca failed to pay back the promissory note for $400,000. The Court agrees that this claim is time-barred.

It is not disputed that as of January 15, 2008, Plaintiffs knew that they had not been paid back for the $455,000 in notes they extended to De Oca by November 5, 2007 or the "next

---

[2] Defendants present several other bases for summary judgment. Because the Court finds that Plaintiff's claim against Defendants is time-barred, the Court need not address the other asserted bases.

5
Case No.: 10-CV-00509-LHK
ORDER GRANTING SUMMARY JUDGMENT

1   following days." De Oca was not able to obtain funding for the October 12, 2007 version of the

2   contract for $1,499,000 M. De Oca was also not able to obtain funding for the $400,000 loan from

3   Plaintiffs, either by November 15, 2007 (the first due date on the $400,000 note), or by January 14,

4   2008 (the date escrow on the $400,000 contract was set to close), and that he never made any

5   payments on either the $400,000 note or the $55,000 note. Finally, Plaintiffs claim their injury

6   arose when they issued the promissory notes to De Oca (on October 30, 2007 and November 1,

7   2007) and allowed escrow to close on the $ 1.1 M contract (on November 5, 2007).

8   In light of these undisputed facts and the Plaintiffs' contentions, the Court finds that

9   Plaintiffs were or should have been aware of all elements of their negligent misrepresentation claim

10  as of, at the very latest, the day after escrow on the $400,000 contract was set to close—January 15,

11  2008. Plaintiff's theory is that they would not have issued the $400,000 or $55,000 loans to De

12  Oca but for Brigham's statements that repayment of the loans would be "promptly forthcoming"

13  upon close of escrow on the Property, and that they would be paid back in the "next following

14  days" after escrow closed. Compl. at ¶ 16. Escrow on the Property closed on November 5, 2007.

15  Following this, De Oca failed to pay back the $400,000 by the due date of November 15, 2007 in

16  the note, and then failed in a second attempt to get funding for the $400,000 note through the

17  November 27-28, 2008 contract. As of January 15, 2008, the day after escrow on the $400,000

18  contract was set to close, De Oca had made *no* scheduled payments on either the $55,000 note or

19  the $400,000 note, and had not obtained funding for the $400,000.

20  At this point, Plaintiffs knew or should have known all elements of their negligent

21  misrepresentation claim: (1) Plaintiffs knew that Ms. Brigham had made statements regarding

22  funding for the notes to De Oca; (2) Plaintiffs knew or should have known that these statements

23  had been made without sufficient reason to believe they were true, since funding for the notes had

24  in fact failed to come through despite repeated efforts to obtain funding; and (3) Plaintiffs were

25  aware of the resulting damage, *i.e.,* the extension of the notes to De Oca and closure of the $ 1.1 M

26  contract. *Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1201 (9th Cir. 2001). In light of the facts

27  known to them at this time, Plaintiffs should have at least suspected the remaining two elements of

28  their claim: (1) that Brigham had made these allegedly false statements with the intent of inducing

6

them to act by closing escrow on the $1.1 M contract, and (2) that Plaintiffs themselves did not realize Brigham's statements were false and reasonably relied on them.  Plaintiffs have introduced no evidence of any information learned after January 15, 2008 which allowed them to discover, for the first time, any element of their negligent misrepresentation claim against Brigham and Coldwell.

Certainly, by January 15, 2008, a day past the deadline for close of escrow stated in the second contract for $400,000 and in light of De Oca's failure to make any payments on either note for 3 months, Plaintiffs should have been aware of their alleged injury and that Brigham's statements regarding funding for the second loan were untrue.  *See Platt Elec.,* 522 F.3d at 1055-56 (finding negligent misrepresentation claim relating to product safety accrued when plaintiff became aware of a safety-related recall; based on the recall, plaintiff "should have been suspicious" that the safety ratings had been negligently performed).  Plaintiffs were required to conduct a "reasonable investigation" to discover their claim once they became aware of their injury.  *Id*.  "So long as there is a reasonable ground for suspicion, the plaintiff must go out and find the facts; she cannot wait for the facts to find her."  *Apple Valley U.S.D. v. Vavrinek, Trine, Day & Co., LLP,* 98 Cal. App. 4th 934, 943 (2002) (internal citation and quotation omitted).  In *Apple Valley*, a claim of negligent misrepresentation against an accounting firm accrued when the school district learned of accusations suggesting that an audit contained inaccuracies, began internal investigations regarding these accusations, and began withholding money on the basis of these concerns.  *Id*.  These facts supported dismissing the negligent misrepresentation claim at the pleading stage, because they showed "beyond dispute" that the District had "at least a suspicion of wrongdoing" two years and one month before filing suit.  *Id*. at 944.  Likewise, by January 15, 2008, as outlined above, Plaintiffs knew that Brigham's statements that their loans of $455,000 to De Oca would be repaid within a "few days" of November 5, 2007 were untrue.

Plaintiffs had two years from this date to investigate their claim against Brigham and Coldwell and to bring this claim, but Plaintiffs failed to do so.  Plaintiffs asserted their claim against Defendants on February 4, 2010, more than two years after their negligent

7

Case No.: 10-CV-00509-LHK
ORDER GRANTING SUMMARY JUDGMENT

misrepresentation claim accrued.  Thus, the Court finds that Plaintiffs' claim against Defendants is time-barred.

At the hearing on this Motion, Plaintiffs argued that because the $400,000 note provided for two years of interest-only payments, the limitations period regarding the principal value of the note did not begin to run until that entire time period elapsed, because the principal was not due until that time.[3]  This argument relates to the accrual of a potential breach-of-contract claim against De Oca for payments on the note.  While it may be true that a claim for the principal payment on the note would not accrue until the due date for the final payment, this is irrelevant to the question of when the claim for negligent misrepresentation against Brigham and Coldwell accrued.  That claim is based on statements made in October, 2007 and an injury sustained in November, 2007.  Plaintiffs have articulated no reason that they could not have suspected Brigham's alleged wrongdoing until the final principal payments were due from De Oca.

IV.     Conclusion

Accordingly, summary judgment for Defendants is GRANTED.

**IT IS SO ORDERED.**

Dated: April 15, 2011

_____
LUCY H. KOH
United States District Judge

---

[3] Although not relevant to determining when the negligent misrepresentation claim accrued, the Court notes that, pursuant to the acceleration clause, Plaintiffs could have sued for the full value of the note as soon as De Oca defaulted.  Therefore, Plaintiffs could have demanded full repayment from De Oca starting with his default in November, 2007.

8
Case No.: 10-CV-00509-LHK
ORDER GRANTING SUMMARY JUDGMENT